Council on behalf of Mr. Coleman, you can step forward and identify yourself. Good morning, your honors. My name is Brian Rayne on behalf of the appellant, Mr. Jonathan Coleman. Good morning. Go ahead. This is a PC matter. Yes, it is, your honor. May it please the Your honors, we raised three issues in the opening brief. Today, I'd like, with your permission, to discuss issue one, that the circuit court erred in summarily dismissing Jonathan Coleman's pro se post conviction petition, which alleged an arguable claim of ineffective assistance of counsel. In regard to argument three, I'd like to quickly note that we do recognize that Alcazar is controlling on the issue of whether the frivolous lawsuit statute is constitutional. Of course, I'd be happy to take questions on any of the issues. With respect to argument one, Coleman's post conviction petition sufficiently alleged that his trial attorney was arguably ineffective for failing to advise Coleman that he had the personal fundamental right to testify in his defense, and that it was Coleman's decision, and Coleman's decision alone, whether to take the stand. When Coleman told his attorney that he wanted to testify, counsel stated that counsel would not put Coleman on the stand, leading Coleman to believe it was counsel's decision whether he testified. Moreover, the trial court never admonished Coleman of his right to testify. Now, that was a question I had, Mr. Raymond. So, you don't mention that in the brief, do you? I believe so, your honor. We do mention that in the brief. So, you're saying that in the record, this isn't one of those cases where the trial judge advised him during the trial, you have, it is your right and your right alone to decide whether or not to testify, but you probably should talk to your lawyer about that. That's correct, your honor. There was no admonishment. No admonishment. No admonishment at all. All right. In addition, I forget, was this a jury or was this a bench? This was a jury trial, your honor. And the circuit court, in dismissing Jonathan's petition, I would note, also did not address this claim. In this court's 2001 decision in Peabody Smith, this court found that the petitioner raised a cognizable claim of ineffective assistance of counsel for failing to adequately advise his client of the right to testify when counsel met with the petitioner two or three times before trial, but failed to explain the right in detail. The court remanded the case for further proceedings, even though the court did not believe there's a reasonable likelihood that the petitioner would have testified absent counsel's deficient explanation. I forget, is there anything in the record regarding his background, Mr. Coleman's? Yes, your honor. Any prior contact with the criminal justice system? Mr. Coleman had two juvenile adjudications. And that's actually a subsection of this argument, because he's also alleged that in explaining why counsel would not call Coleman to the stand, counsel arguably misadvised him that his juvenile adjudication would be admissible by Coleman taking the stand. And it could be, couldn't it? Couldn't it? Your honor, Coleman has an argument that at the time of his trial, the state of the law would be that those adjudications were not admissible. Well, but what if his testimony opened the door? That is possible, but the statement made by counsel was that by taking the stand. So something more would be required. What if counsel assessed his client as being one to make statements that could lead to opening the door on his, regarding his juvenile adjudications? Well, there's nothing in the record indicating that we could presume that the defendant would mislead the jury. And of course, the flaw with counsel's discussion with Coleman is that he never advised him that this was his decision to make, and actually misled him into believing that it was counsel's decision. When was the statute changed? Are you saying the statute had not changed at the time of this jury trial? No, your honor. The statute had been amended in 1999, several years before the jury trial. Then I'm not quite following. If the statute had been amended, and there's authority out there now that says that the juvenile adjudication can be used to impeach, I'm not following how you said there wasn't any authority for this at the time. Well, the argument is that Coleman, at the time of this trial, the law regarding the admissibility of juvenile adjudications was Rule 609D as adopted by Montgomery, which excludes the juvenile adjudications for impeachment. Of course, the statute, the Juvenile Court Act was amended, Section 5158, before trial. And Coleman's argument is that on its face, the admissibility of juvenile adjudications is still subject to the rules of Montgomery. Okay. And that issue is pending in the Supreme Court. Right. It is. And at that time, there hadn't been any interpretation of the statute at all. There actually had been interpretation of the line pursuant to the rules of criminal evidence, which was in the old statute. That line was interpreted as referencing Montgomery. And that line didn't change. I'm only directing myself to the new, the language of the new statute. That's correct. All right. All right. I understand now. Going back to the jury trial, was the jury instructed on the defendant's right not to testify? Yes, Your Honor. And do you think, do you think that put the defendant, and I think the instruction, whether or not the instruction was given to the jury, and in fact, they might even be so notified during the court hearing, I'm not sure whether that happened here, but doesn't that put the defendant on notice that he has a right to testify on his own behalf and he can choose not to? No, Your Honor, because the instruction to the jury was first of all not directed at Coleman and does nothing on its face to impart knowledge to Coleman that this is his decision. That this is one of five personal fundamental rights that must be made. How do you reconcile Smith with the cases that say when it comes to the right to testify, the burden is on the defendant to say, I want to testify, even in the face of counsel's, defense counsel's decision or information that he shouldn't. Why shouldn't, because it's such an easy allegation to make and it's difficult to, you know, really resolve short of an evidentiary hearing where you have both sides present. Why, how can, how do you reconcile Smith with, for example, Brown? I don't know if you're, the Supreme Court case of Brown that says that the record must reveal something to suggest that the defendant did in fact want to testify and what's, what's in the record here? This is an excellent point, Your Honor, because this is the state's only argument that the circuit court's decision was proper. But it's a broad argument, isn't it? No, Your Honor, it is not and I will explain why. Foremost, Jonathan in his petition did allege that he told his attorney he wanted to testify. In Brown, the Supreme Court distinguished the case of People v. Davis, a prior Supreme Court case, stating that a contemporaneous objection in the trial court is necessary to raise a claim of ineffective assistance for failure to advise your client to testify on direct appeal. Brown, and subsequently Youngblood interpreting Brown, acknowledged that to raise this claim in a post-conviction proceeding, at the first stage, the defendant merely needs to allege that he made an assertion to his attorney, not the trial court, which under Hodges and a liberal pleading standard is a reasonable interpretation of those cases. And as well, this is a post-conviction ineffective assistance of counsel claim and necessarily comes from evidence outside of the record. So there's really no support for an argument that the record needs to show an assertion in the trial court. Arguably, there needs to be an assertion in the petition and that assertion is here. Does he have to say what he would have said? In Smith and Youngblood, the court said that you need to assert that you would have testified and that you need to assert that the nature of your testimony would have been relevant to a fact in dispute. Did he include some words to the effect that he would have demonstrated his innocence? Was that in the PC or not? Yes, Your Honor. He alleged that had he known of his right, he would have testified to explain his innocence. And you think that that conclusory information is enough to withstand the dismissal? Yes, Your Honor. Absolutely. Under Smith and Youngblood. Youngblood said you could hear this at an evidentiary hearing. Yes, Your Honor. Yes. And if you look at the petition, there is more. Let me ask you one of the difficulties I have with these sort of PCs based on an allegation of being deprived of your right to testify. Let's say he were granted a new trial. Yes. And he chooses not to testify. What difference does it make? What difference does it really make? Or can we bind him to testify? Obviously not. So where does prejudice, which is at the bottom of every ineffective assistance of counsel claim, where does prejudice come into play? Is it presumed prejudice simply because he didn't knowingly exercise that right to testify? Or can we simply look at the evidence and say the evidence is enough to say that even his testimony wouldn't have made a difference? Certainly at the first stage, you may not look at the evidence to say that the testimony would not have made a difference. Well, how do we say there's prejudice if we don't know what he would say and then we don't know whether that would make a difference in the outcome? And when you say not at the first stage, I find it difficult to believe that it could end at the second stage. You're talking about a situation where it almost always would have to go in evidentiary hearing where the defense counsel would testify and I thought that's what you suggested in Youngblood, where defense counsel would have to testify and the defendant would have to testify and then the trier of fact would have to make a determination. So what you're really saying is that every time these sort of allegations are made, it has to go to an evidentiary hearing and that just doesn't seem right. No, that's not correct, Your Honor, because at the first stage, the allegation needs to be that his testimony would have been relevant to a fact and dispute. Here he alleged his innocence. Now, at the second stage, you'd have the opportunity to flesh out his testimony so that at a third stage, we could determine whether his denial of the opportunity to testify was prejudicial and might have had an impact on the jury. Also, earlier cases such as Seberg, Vonderpant, and Dredge look at the right to testify as one of the five fundamental personal rights and do presume a prejudice comparable to that of a defendant not having the opportunity to decide whether he wants to be tried in front of a jury or not. So what did Mr. Coleman say regarding what his testimony would have been in light of the other cases? There was other evidence regarding the driver of the car, who was his brother, and the other witnesses that identified him being there. How was he going to undercut all of that testimony had he had the chance to testify, had he testified as he claims now that he wanted to? Yes, Your Honor. Coleman's petition, in just a plain reading of the petition, shows that he would have testified that he was misidentified as the shooter, that he approached one of the witnesses who recanted his identification at trial. There were two eyewitnesses. In the petition, he says he explains his innocence and that it was a rumor that he was identified, a rumor that he was the shooter. So he doesn't explicitly address whether he was in the car or not, and that's something that could be fleshed out. Wouldn't he know whether he was in the car or not? He would know if he was in the car, but he wouldn't know that he needed to include that claim. So wouldn't you expect him to make that assertion in his post-conviction claim of, I could have testified and I could have extricated myself from this situation? I think certainly, with the benefit of counsel, at the second stage, that that allegation could be fleshed out, because counsel would know what needs to be in this petition. But no, I don't believe Jonathan would have known to put that in his petition. You can reserve some of your time for rebuttal. Your Honors, if you have no further questions, I reserve a few minutes for rebuttal and would ask that you reverse the circuit court's dismissal of Jonathan's petition and remand his case. Thank you. Good morning, Your Honors. Assistant State's Attorney Douglas Tarbath, on behalf of the people of the State of Illinois. The trial court properly dismissed the defendant's post-conviction petition as frivolous and patently without merit, because there are no other. That's the standard here under Hodges. Isn't it frivolous? What do you characterize this allegation in the PC? Do you characterize it as entirely frivolous? Absolutely frivolous. Why is it frivolous? How do we know it's frivolous at this point? Well, I guess to start where Your Honors sort of left off just a few minutes ago, he has an alleged prejudice, either in his petition or in his affidavit. Don't you agree, though, in your brief that alleging that the attorney didn't advise him that testifying was his right is a legal basis for a petition? I know the defendant put that in his reply brief, that the State concedes that the defendant has a legal basis. That is incorrect. We did not concede that he has a legal basis. In the abstract, a defendant could have a legal basis. How do you distinguish the Smith case now? Well, there's two Smiths. There's a Supreme Court case, which was a direct appeal, and then there's this Court's decision in Smith. I assume you're talking about this Court's case. I'm talking about 326-11. Yes. That case is, to the extent that it did not reach the issue of prejudice, and I think this Court's identified that that's a necessary component. And the cases in Youngblood and Barks and numerous other cases identify that. So help us out here. So you're saying that that's what we should say in addressing Smith? We should say in this case that Smith was wrongly decided? Well, I don't think this Court has to do that, because in Smith there was actual erroneous advice. The attorney in that case advised the defendant that... It was either in the defendant's petition or in his affidavit, but it was taken as true, as required in a post-conviction proceedings, that it was taken as true, that he actually misadvised and that if you testify, this gang evidence is coming in. Well, that didn't have anything to do with whether or not the gang evidence was coming in. Going back to the frivolous part, are you saying it's frivolous because not enough information was alleged in the post-conviction? That it is much like, as Justice McBride suggests, conclusory allegations? Well, it is. The defendant hasn't even testified, hasn't attested to what he would have testified. But he did say, didn't he, something like he would establish his innocence? He did say that. And doesn't Van Herbant say that the petitioner's conclusory allegation that his trial counsel prevented him from testifying was sufficient to warrant a remand? I think there's an entire line of cases that has made that statement. Smith actually is one of them, but this Court has since rejected this dredge decision, which was one of the earlier cases that said that this is enough to establish a just test. It's just alleged, I would have testified, boom, I automatically get a third stage hearing, or at least second stage and then a third stage hearing. But this Court, in fact, two members of this very panel, as recently as Hernandez, have rejected that and actually rejected dredge on that point that the defendant must still show prejudice. And that when he fails to not only allege it, but establish it, that the appellate court doesn't even need to reach the issue of deficient performance. Were those cases, though, did they involve the right to testify? They did. They did. They did similarly involve claims that the defendants were prevented or precluded from testifying through the advice of their attorneys. Do you think it makes any difference in this case that the trial court never advised him about the right? I don't. I mean, I know there's cases that say, hey, this is good practice. Trial courts, boy, we could really avoid a lot of litigation down the road if you had just admonished them of their right. Well, that certainly would have dispelled any question here. That would have been something on the record that would have indicated that the defendant was advised by the court, whether his attorney advised him, you know, half-heartedly or didn't advise him, or incorrectly or erroneously advised him. If the trial judge had said that here, we really wouldn't have an issue, because then he would have been advised by the judge that his right to testify belonged to him. Yes, and I know this court is well aware that claims are still made when that's on the record that they were being coerced. Their attorney had told them beforehand. Do you agree that in this case there was no discussion about his right to testify? That's correct. I do agree. As to with regard to this defendant, the co-defendant, the judge did admonish him. What about during voir dire? There was no mention of right to testify at all? When the prospective jurors are asked, you understand that much like the Zayer principles, and each one has to be asked of the prospective jurors, and one of those includes the right not to have his silence used against him. Or that his failure to testify cannot be used against him. So was that presented before trial even resumed? That the venire was properly admonished under 431? In the defendant's presence, no? I believe that did happen. I would have to review the record. The Zayer issue wasn't raised. I don't know 100%, but I believe that it was, and the Zayer issue was never raised. Would that be enough to at least say that the defendant should have recognized maybe a conflict? I know his claim is that, sure, he knew he could testify, but he thought defense counsel controlled whether or not he would, as opposed to the defendant himself. And I think that points to the, as we call it in our brief, this internal inconsistency in his own affidavit. He says on one hand that, my attorney said it would be a bad idea to testify because it could damage the case. But my attorney didn't tell me that I had the right to testify. Well, if his attorney told him it was a bad idea, that implies that he had a right to testify. So I take exception to, I know counsel got up here and said, the defense attorney said he would not put the defendant on the stand. That is not in the petition, it's not as an affidavit. He said it would be a bad idea if he testified, and that falls squarely within those cases such as Buchanan and Barks say, frank, candid advice to a client not to testify is not the basis for a claim of ineffective assistance of counsel. It's on the contrary, it's a good defense attorney that's telling him that. I would like to respond briefly to the Zayer claim that is pending in the Supreme Court. In fact, it was argued on Tuesday that it's very well established. It's nowhere even recognized in the defendant's brief that the analysis of an ineffectiveness claim is at the time of the representation, and at the time of the representation, which was 2004, it had been six years since the Juvenile Court Act had been amended to specifically provide for juvenile convictions for defendants, not just witnesses, if they testified. Bearing that in mind, the defense attorney in this case would have been remiss if he hadn't told him this. And I can imagine a position, let's say the defendant had testified years later, his claim would be just the opposite. He would say, I only testified because my lawyer told me that, he never told me that my convictions would be admitted if I testified, and he should have done so because here's the Juvenile Court Act that says that. So I think on that basis, that's why I strongly believe that that claim is frivolous, because his attorney was relying on a then-valid statute, and I think Justice McBride pointed out this hadn't even been the subject of any cases until the Supreme Court in Harris in 2008. And then even in Harris, they reserved the question until the via. So I think that there are other cases that involve... At the time that he was advising him, though, it didn't really, what we had out there besides the Supreme Court cases that said if you opened up the door, it could be used. But weren't there the appellate court cases that, not from the First District, but Kearns and Amlin that said generally you couldn't admit juvenile adjudication? That's correct. And I think those have no relevance for the very reason that they predate the change in the statute. So they are, and I understand that this is currently pending before the Supreme Court, but because this particular claim is, and could only be in the context of the claim of ineffective assistance of counsel, that knocks it right out of the box there because the defendant cannot prevail based on just the procedural posture. I do have a suggestion. I think your office filed a motion to cite additional authority? Yes, Your Honor. And did you, that was Alcazar? Yes, Judge, it was. There's no need to give us the entire case because that's a lot of paper. Okay. And just the cite alone, but I can almost assure you that we're very familiar with it. Absolutely. I apologize. And I will make sure that our office is aware of that. We will refrain from doing that. For all those reasons, for those stated in the State's brief, we ask that this Court affirm the dismissal of the defendant's post-conviction. I just have a few brief points, Your Honors. First of all, I just want to be clear, the allegation in this petition is not contradictory. Counsel has literally misrepresented what is in the petition here in stating that the petition and affidavit do not say that it was counsel's decision. The exact language used in the petition is that after Jonathan told his attorney he wanted to testify, counsel said, it would be a bad idea for me to put you on the stand, which is what led Jonathan to believe that it was counsel's decision. And obviously that statement does nothing to impart to Jonathan knowledge that it was Jonathan's decision. But to be clear, he doesn't say, I'm not going to put you on the stand, or I'm not going to call you, or you cannot testify because I won't let you, or anything like that. Well, I would argue that this is like that, and the action of putting him on the stand is... Let me suggest the situation where defense counsel would make that particular statement. That particular statement would be made by defense counsel when the defendant wants to testify to something that defense counsel cannot allow his client to testify to. Do you understand what I'm saying? I understand what you're saying, but the allegations in the petition read together are that there was not only this statement, but this is read in conjunction with the allegation that there is no discussion... Well, you acknowledge that to the extent that the defendant wanted to testify, the defendant told his attorney what he was going to testify to if he took the stand. Certainly that's a fair inference to take from what happens in a criminal case with defense counsel preparing his witnesses. And the defendant wouldn't make that statement in a vacuum. He would make that statement that I want to testify by informing his counsel what he wanted to testify to. I would say that there's nothing in the petition or record to indicate whether Jonathan told his attorney that. It does seem like he probably would have explained what he wanted to testify to, but this on its face is not an attorney saying you shouldn't testify, you're going to have to think about this. I can't put you on the stand because you're being dishonest. What it says is he is not going to call Jonathan based on his arguably mistaken belief that his juvenile adjudications. In any event, your position is that we either have to, as the states assert, that Smith, our case, the appellate court's case, was wrongly decided, or under Smith we should remand for a second stage. There are two Smith cases that were being thrown about. The site I used was not the Smith case that we were referring to. The earlier Smith case is the PC case that says that the allegations were sufficient to withstand summary dismissal. That's the 2001. The other Serena Smith case was written by me, and it's about the fines and fees. There's actually a third Smith case too, but we need not get into that. All right, so we've got all that straight. If there are no further questions, Your Honor, we would ask that you remand Jonathan's case for further proceedings. All right, thank you very much.